**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHAEL BROGAN,

        Plaintiff

v.                                                CIVIL CASE NO. 05-70758
                                                      HON. MARIANNE O. BATTANI

HOME DEPOT U.S.A., INC.,

        Defendant
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Amended Motion for Summary Judgment (Doc. # 19). The Court heard oral argument on April 11, 2005. At the conclusion of the hearing, it took this matter under advisement. For the reasons that follow, Defendant's motion is **GRANTED**.

**I.  FACTS**

Plaintiff, Michael Brogan, filed suit against his former employer, Defendant Home Depot U.S.A., Inc. ("Home Depot"), alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The facts giving rise to the claim follow.

Brogan began working for Home Depot in 1998, as a part-time sales associate in the electrical department. Within four months, he became a full-time employee. In April 2000, Defendant promoted Brogan to department supervisor.

Home Depot evaluates each associate's performance every six months. The "Mid-Year" and "Annual" reviews rate the employee in various areas of performance and development, and then give an overall rating, incorporating these areas. After receiving a "3" (Solid Performance) rating in July 2001, Plaintiff's performance ratings declined to "2" (Needs Improvement"), and

Plaintiff received several Performance Associate Notices for poor performance during the following year. At some point prior to Plaintiff's July 2002 review, the rating system changed from a numerical scale to a performance-code system. Pursuant to the new system, Plaintiff received an overall "Performer" rating on his mid-year review.

While at work on October 5, 2002, Plaintiff felt a tingling on the right side of his body and began to feel weak and dizzy. Dep. of Brogan at 60. Plaintiff drove himself to the hospital, and was admitted for four or five days. Id. at 61. Plaintiff was advised that he had suffered a stroke and was prescribed medication to control his blood pressure. Id. at 59-60.

On October 28, 2002, Brogan returned to work with "light duty" restrictions from his doctor. Consequently, he worked in the phone center. After approximately one month, Plaintiff's restrictions were lifted, and he returned to the electrical department as a sales associate. Although Plaintiff held the title of sales associate, he functioned as a department supervisor, performing job duties such as preparing schedules, maintaining stocks, and "run[ning]" the associates. Id. at 70.

In December 2002, Douglas Dunbar, the store manager, asked Plaintiff if he would be interested in a promotion to the electrical department supervisor position. Plaintiff agreed, but stated, "But let it be understood, if I start feeling bad again. . .I'm out of here." Id. at 81. Plaintiff subsequently registered for the promotion through the Job Preference Process. He interviewed for the position, and on December 23, 2002, Home Depot promoted him. Although Brogan states that his doctor told him, "don't lift anything heavy," Plaintiff was under no written medical restrictions at this time. Id. at 81-2.

In February 2003, Paulus rated Plaintiff an overall "Performer" on his annual review. The review covered Plaintiff's performance from the date of his promotion.

In the summer of 2003, Brogan started treatment with Dr. Irene Metro for his blood pressure. Dr. Metro initially put Plaintiff on a blood pressure medication that would work with the medication he already took; however, his blood pressure was still elevated and going up. Id. at 92. Plaintiff advised Paulus and the ASMs that he had not been feeling well. Brogan also informed Dr. Metro, who then changed his medication, which brought his blood pressure down to a safe range. Id. at 101-2. During a follow-up visit, on August 14, 2003, Dr. Metro gave Plaintiff a note for Home Depot, which read:

> "Mr. Brogan, because of his increased stress at work and resultant affect on his blood pressure, needs to step down to a less stressful position. Please call if need more information."

Pl.'s Ex. 10.

According to Plaintiff, he showed the note to Paulus and gave it to Will Smith in Human Resources the same day. Smith advised Brogan that a form had to be completed to request a demotion; however, Smith did not have the form available at the time. Plaintiff testified that he received the form "a couple of weeks later." Id. at 96-7. The request form he completed is not dated.

On August 21, 2003, Paulus completed Brogan's mid-year review, indicating that overall improvement was required. Because of the poor review, Plaintiff was placed on a performance improvement plan, which required a progress evaluation to be completed after 90-days.

On September 26, 2003, Tim Hourigan, the Human Resources Vice President, denied Brogan's demotion request. According to Hourigan, he routinely denied such requests from

3

associates with an "Improvement Required" rating on the most recent mid-year or annual review.

From October 2003 to December 2003, Paulus counseled Brogan on improving his performance and documented their discussions. Paulus informed Plaintiff that several areas still needed improvement or further disciplinary action would be taken.

On December 15, 2003, as part of his performance improvement plan, Plaintiff received his 90-day progress evaluation. Paulus rated Plaintiff an overall "Performer." The progress evaluation uses the same form and rating system as the mid-year and annual reviews. Id. at 141.

Despite the satisfactory 90-day assessment, on January 31, 2004, Brogan received an overall "Improvement Required" rating on his annual review. Accordingly, on February 3, 2004, Plaintiff was terminated per Home Depot policy. Although the written policy is not submitted, Hourigan's affidavit provides that an associate who receives two consecutive "Improvement Required" review ratings is terminated for poor performance. Plaintiff understood the policy existed. He nevertheless insists that his 90-day evaluation counts towards the policy, and thus, contests that his "Improvement Required" ratings were consecutive. Id. at 152-4. Plaintiff's assertion is contested by Paulus' testimony, which provides that only the bi-annual reviews counted toward the termination policy. Dep. of Paulus at 71-2.

## II.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)).

To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

### III.   ANALYSIS

Plaintiff's Complaint alleges that Defendant violated the ADA by refusing to accommodate him through a demotion. Defendant maintains that Plaintiff cannot make a prima facie case of discrimination because he cannot show that he was a qualified individual with a disability; that it was not required to demote Plaintiff in light of its legitimate, non-discriminatory demotion policy; and finally, that there were legitimate business reasons for Plaintiff's termination.

To evaluate the merits of the arguments, the Court turns to the analytical framework set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973), used to analyze claims brought

under the ADA when a plaintiff lacks direct evidence of discrimination. First, the plaintiff must establish a prima facie case of disability discrimination. The burden of production then shifts to the defendant to articulate some "legitimate, nondiscriminatory reason" for its actions against the plaintiff. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The defendant need only present evidence that raises a genuine issue of material fact; it is not necessary to prove that the proffered reasons actually motivated the defendant's action. Id. at 254-55.

If the defendant meets this burden, the "prima facie case is rebutted." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993), citing Burdine, 450 U.S. at 255. The plaintiff then must demonstrate by a preponderance of the evidence that he has been the victim of discrimination. Burdine, 450 U.S. at 256. To do so, a plaintiff may show the reasons proffered by the defendant were merely pretextual. "To so demonstrate, the plaintiff must prove 'that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge.'" Hoskins, 227 F.3d 719, 731 (6th Cir. 2000) (citing Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 729 (6th Cir. 1999) (quotation omitted)). Plaintiff always retains the "ultimate burden of persuasion." St. Mary's, 509 U.S. at 511.

With this approach guiding the analysis, the Court first addresses whether the evidence satisfies Plaintiff's burden to show a prima facie case.

**A.  Prima Facie Case**

7

To state a claim of disability discrimination under the Americans with Disabilities Act, a plaintiff must show that he is a disabled person within the meaning of the Act; that he is qualified with or without a reasonable accommodation to perform the essential functions of his job; and that he was discriminated against because of his disability.  42 U.S.C. §§ 12111(8), 12112(a);  McKay v. Toyota Motor Mfg., U.S.A., Inc., 110 F.3d 369, 371 (6th Cir. 1997) (citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1179 (6th Cir. 1996)).  Under the statute, a person is disabled if he has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual;" or "has a record of such impairment" or "does not have an impairment, but is regarded as having one."[1]  42 U.S.C. § 12102(2).

With these principles in mind, the Court directs its attention to whether Plaintiff is a individual with a disability within the meaning of the ADA.  To qualify as a person with a disability under the ADA, an individual must have "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2).  According to the EEOC regulations, "substantially limit[ed]" means "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

---

[1] The Court rejects Plaintiff's alternative argument that he is disabled under the ADA because he was regarded as having an impairment by Defendant.  This claim is not substantiated by the facts:  Plaintiff has not presented any evidence that Defendant mistakenly believed 1) that his high blood pressure substantially limited a major life activity; or 2) that his actual, nonlimiting impairment, controlled high blood pressure, substantially limited a major life activity.

29 C.F.R. § 1630.2(j) (2001).  The court assesses whether an individual is substantially limited in a major life activity in light of the following factors: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment."  29 C.F.R. §§ 1630.2(j)(2)(I)-(iii).  See also  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-97 (2002).

The Supreme Court has held that the determination of disability focuses on the medical condition's actual effect on the specific plaintiff.  Sutton v. United Air Lines, Inc., 527 U.S. 471, 488-89 (1999).  Accord Albertsons, Inc. v. Kirkingburg, 527 U.S. 555 (1999) (holding that the ADA imposes a statutory obligation to determine the existence of disabilities on a case-by-case basis, based upon the actual effect of the impairment on the life of the individual in question).  For example, in Sutton, the Court held that mitigating or corrective measures must be taken into account in judging whether an individual possesses a disability because doing otherwise would "run[ ] directly counter to the individualized inquiry mandated by the ADA." Id.  Thus, the Court must evaluate a person with high blood pressure in his medicated state to determine whether he is disabled under the ADA.

Although Defendant contends Plaintiff's high blood pressure was mitigated by medication, and he was not disabled, "[t]he use or nonuse of a corrective device [medication] does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment *actually* faces are in fact substantially limiting." Sutton, 527 U.S. at 488 (emphasis in original).  Therefore, the Court considers Plaintiff's argument that his high blood pressure, even with medication, substantially limited major life

activities because his impairment was not under control. His argument is undermined by his own testimony.

Although Plaintiff alleges that his blood pressure continued to increase despite medication, he fails to acknowledge that his physician, Dr. Metro, changed his medication in response to Plaintiff's concerns. The record reveals that after Plaintiff was placed on a second medication, his high blood pressure was brought down to a safe, controllable range:

> Q: She [Dr. Metro] changed the medication?
> A: She put me on that second blood pressure medication.
>
> Q: Was that before she gave you this note on August 14?
> A: I believe it was. It was right around that time period.
>
> Q: After she gave you that second one, that's when it started getting controllable, is that what you're saying?
> A: It was still high, but yeah, it brought it down to a safe range, but not a low normal range.

Dep. of Brogan at 101-2.

Consequently, Plaintiff will only be found to have a disability under the ADA if, notwithstanding the use of medication, he was substantially limited in a major life activity. See Sutton, 527 U.S. at 488. He identifies two: lifting and working.[2]

### 1. Lifting

First, Plaintiff alleges that his high blood pressure substantially limited the major life activity of lifting because his doctor instructed him not to lift heavy things. Apart from this

---

[2] "Because of the problems surrounding 'working,'" as a major life activity, the Court "treat[s] it as suggested by the EEOC, as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity." Mahon v. Crowell, 295 F.3d 585, 590 (6th Cir. 2002).

10

statement, however, Plaintiff offered no evidence from which a reasonable jury could infer such limitation. The lack of competent evidence undermines his claim.

The Sixth Circuit has held that "a single conclusory statement about an alleged substantial limitation is not enough to avoid summary judgement sought by the employer." Cotter v. Ajilon Servs., Inc., 287 F.3d 593, 598 (6th Cir. 2002) (citations omitted). Moreover, even if Plaintiff were under a heavy lifting restriction, courts have held that heavy lifting is not a major life activity. See Thompson v. Holy Family Hosp., 121 F.3d 537 (9th Cir. 1997) (holding that an employee's inability to lift more than 25 pounds did not substantially limit her ability to engage in major life activity of lifting); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996) (holding that a 25-pound lifting limitation "does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"), abrogated on other grounds; Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996) (holding that a 25-pound lifting restriction did not substantially limit any major life activities); Ray v. Glidden Co., 85 F.3d 227, 229 (5th Cir. 1996) (holding that where a plaintiff could lift and reach as long as he avoided heavy lifting, he was not substantially impaired). The Court agrees with the reasoning advanced in these decisions. Therefore, Plaintiff's claimed impairment did not substantially limit the major life activity of lifting.

### 2. Working

Because Plaintiff has not shown that his impairment considerably or profoundly limited his ability to perform any other major life activities, the Court next looks at Plaintiff's claim that he was substantially limited in the major life activity of working. The terms "substantially" and "major," "need to be interpreted strictly to create a demanding standard for qualifying as

disabled" under the ADA. Williams, 534 U.S. at 197. Consequently, to be substantially limited in the major life activity of working, a plaintiff must be precluded from more than one type of job, a specialized job, or a particular job of choice. "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton, 527 U.S. at 492. See 29 C.F.R. § 1630.2.[3]

Plaintiff's position is that his high blood pressure substantially limited the major life activity of working because he could not work under conditions where there was increased stress, such as the department supervisor position. Plaintiff's inability to work either a class or broad range of jobs is not supported by the record because he concedes that he was capable of working as either the department supervisor or as a sales associate:

---

[3] (3) With respect to the major life activity of working–
 (I) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
 (ii) In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
  (A) The geographical area to which the individual has reasonable access;
  (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
  (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

12

> Q: Would it be fair to say that from August 14, 2003 through February 3, 2004 that you were physically and psychologically capable of performing all the job duties associated with being a sales associate at Home Depot?
>
> A: I believe I was, yes.
>
>   * * *
>
> Q: I'm asking you the exact same question, but just substitute the word "department head" for "sales associate"?
>
> A: I believe I was, yes.

Dep. of Brogan at 191-3. With respect to any work-related limitations, Plaintiff repeatedly stated in his deposition that he could handle the department supervisor job and that he was able to satisfactorily perform his duties. Id. at 72, 81, 105.

Moreover, Plaintiff's demotion request suggests that although his impairment may have made it difficult for him to perform the particular job of department supervisor, his impairment did not preclude him from performing different jobs, such as sales associate. See Williams v. Stark County Bd. of County Comm'rs., 7 Fed. Appx. 441, 446 (6th Cir. 2001) (holding hypertension was not a disability and did not substantially limit a major life activity where medication controlled the hypertension and the "Plaintiff's desire for a demotion suggests that she could perform certain jobs-just not the particular job from which [Defendant] terminated her."). If jobs which utilize a plaintiff's skills are available, he is not precluded from a substantial class of jobs. Sheehan v. City of Gloucester, 321 F.3d 21 (1st Cir. 2003).

Because Plaintiff failed to allege or provide evidence that he was disqualified by his claimed disability from a class or broad range of jobs, he does not meet the strict interpretation of "major life activity" and "substantially limits" in the demanding standard used to determine if an individual is disabled. See Sutton, 534 U.S. at 197, Mahon, 295 F.3d at 592. Therefore,

Plaintiff's impairment does not substantially limit the major life activity of working, and he is not a qualified individual with a disability as defined by the ADA.  Accord Murphy v. United Parcel Serv., Inc., 527 U.S. 516 (1999) (holding that a truck driver with high blood pressure did not suffer a "disability" under the ADA where the medication he took allowed him to perform major life activities without substantial limitation; Hein v. All America Plywood Co., Inc., 232 F.3d 482, 487 (6th Cir. 2000) (holding that hypertension was not a disability because it was mitigated by medication).

Because Plaintiff has failed, as a matter of law, to satisfy his prima facie case, the Court need not address the merits of the alternative arguments advanced by Defendant.

## IV.   CONCLUSION

For the reasons state above, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's Complaint is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: May 9, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served upon  this date to Charles B. Ebel and Charles C. DeWitt by electronic mailing and ordinary mail.

s/Bernadette M. Thebolt
Deputy Clerk

14